**John Martin JONES, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 04–93–00468–CR.

Court of Appeals of Texas, San Antonio.

May 10, 1995.

Steven N. Harkiewicz, San Antonio, for appellant.

Steven C. Hilbig, Crim. Dist. Atty., Alan E. Battaglia, Asst. Crim. Dist. Atty., San Antonio, for appellee.

Before LOPEZ, STONE and BUTTS [1], JJ.

STONE, Justice.

A jury found the appellant guilty of aggravated sexual assault of his eight year old daughter, indecency with the child by contact, and indecency with the child by exposure. The jury found he was a repeat felon, and assessed punishment at confinement for eighty-five years for the assault, seventy years for the contact, and fifteen years for the exposure. The judge sentenced him ac-

[1]. Justice Shirley W. Butts not participating.

cordingly, with the sentences running concurrently.

On appeal, the appellant claims arguments by the prosecutor were so inflammatory and prejudicial that he did not receive a fair trial or due course of law. The appellant also claims he did not receive reasonably effective assistance of counsel because his attorney at trial did not (1) limit the admission of evidence of extraneous offenses, (2) avoid asking questions to which defense counsel did not know the answer, or (3) object to the prosecutor's references to extraneous offenses during argument in the punishment stage. In addition, he claims there was insufficient evidence to support the assault and contact charges. For the reasons set forth below, we affirm.

## I. FACTS

When the complainant was eight years old, she lived with her family in a motel room. Her father, the appellant, was unemployed. The complainant testified that he sexually abused her while her mother was working nights as a waitress. Nobody else was present but the complainant's two and four year-old siblings. She testified her father told her she was the "chosen one." He put his hand in his daughter's pants, and they "played horsey." She testified that he had touched her behind with his penis, and that it had hurt. She said she had seen her father's erect penis. She testified she had masturbated him and performed oral sex to the point of ejaculation. She explained that she knew she had to do it "automatically" because her father had told her "[w]hen this all started." She said he promised not to do it again, but he did.

The complainant's outcry occurred after her teacher referred her to a peer assistance program for children who are withdrawn, hyperactive, or who need special attention. The complainant told a fifth grade "peer assistant" what her father had done. The peer assistant told a teacher, who referred them to a counselor. The complainant then told the counselor who testified at trial what the defendant had done to her. The complainant's mother was unaware of the abuse

until the authorities arrived at her door and told her.

## II. ANALYSIS

### A. EXTRANEOUS OFFENSES

■ All of the appellant's points of error other than the "insufficient evidence" points are based in part upon the premise that the complainant testified to extraneous offenses. The record does not support this premise.

■ The indictment alleged the offenses occurred "on or about January 15, 1992." The appellant contends the scope of the indictment covered only activities on January 15, 1992. To the contrary, the allegation of "on or about" a date allows the State to prove offenses at any time before the return of the indictment and within the limitations period. *Ex parte Hyett*, 610 S.W.2d 787, 789 (Tex.Crim.App.1981) (*en banc* without dissent). The court charged the jury accordingly.

The complainant could not testify as to the specific dates of the offenses. However, she did testify that the offenses occurred while her mother was working nights. She named the restaurant where her mother worked and the motel in which they were staying at that time. Her testimony about the presence of her two year-old brother and independent testimony established this period was between presentment of the indictment and the earliest date the statute of limitations would bar. Her testimony therefore addressed acts within the span of time the indictment covered.

Although the complainant testified that the defendant sexually abused her more than once, and that she knew what to do "automatically" because he told her what to do "when this all started," she testified neither to a particular number of times each act occurred nor to any specific instance that indicated acts other than those charged. The indictment alleged five separate acts. Nothing in her testimony indicates that the acts to which she testified were not those charged.

## B. IMPROPER ARGUMENT

In his first two points of error, the appellant claims arguments by the prosecutor at the guilt/innocence stage and the punishment stage of the trial were so highly inflammatory and prejudicial that they denied the appellant a fair trial and due course of law.

■ Proper jury argument must fall within one of four areas: (1) summation of the evidence presented at trial; (2) reasonable deduction from the evidence; (3) answer to opposing counsel's argument; or (4) plea for law enforcement. *Albiar v. State*, 739 S.W.2d 360, 362 (Tex.Crim.App.1987). Counsel has wide latitude in drawing inferences from the evidence that are reasonable, fair, legitimate, and offered in good faith. *Gaddis v. State*, 753 S.W.2d 396, 398 (Tex.Crim.App. 1988). Prosecutors may argue their opinions based on evidence in the record, concerning issues in the case. *Allridge v. State*, 762 S.W.2d 146, 156 (Tex.Crim.App.1988). A jury argument must be extreme or manifestly improper, or inject new and harmful facts into evidence to constitute reversible error. *Kinnamon v. State*, 791 S.W.2d 84, 89 (Tex. Crim.App.1990).

■ Improper jury argument is only incurable if it is so inflammatory that an instruction could not reasonably overcome its prejudicial effect. *Wilkerson v. State*, 881 S.W.2d 321, 327 (Tex.Crim.App.1994). To preserve improper jury argument for appellate review, the defendant must object, request an instruction, and move for mistrial. *Cook v. State*, 858 S.W.2d 467, 473 (Tex.Crim. App.1993). Failure to make a proper and timely objection waives any impropriety in the argument. *Romo v. State*, 631 S.W.2d 504, 505 (Tex.Crim.App.1982).

### 1. PROSECUTOR'S ARGUMENT AT GUILT/INNOCENCE

In his argument on guilt or innocence, the prosecutor used the term "sex slave" without objection from the appellant. Later, the prosecutor stated, "You remember the school counselor testifying that [the complainant] told her that she was the chosen one. Her father chose her, because she was the oldest. And what does he do with the chosen one?

He trains her to be his sex slave. Eight years old—" At this point, the appellant objected that "sex slave" was "unduly suggestive under the rules" and that there was no evidence of slavery. After the court overruled his objection, the prosecutor continued to argue the appellant made his daughter a sex slave without further objection from the appellant.

On appeal, the appellant claims the prosecutor's use of the phrase "sex slave" was so highly inflammatory and prejudicial that it denied him a fair trial and denied him due course of law. Given the evidence of his control and sexual abuse of his daughter, it was a reasonable deduction from the evidence. Further, he waived his complaint. To preserve an issue for appeal, there must be a timely objection that specifically states the legal basis for the objection. *Rezac v. State,* 782 S.W.2d 869, 870 (Tex.Crim.App. 1990). The appellant's objection at trial was not timely because he did not object to the earlier use of the term "sex slave." Even if the instance he objected to had not occurred, the term occurred without objection two other times in the jury argument. *Smith v. State,* 842 S.W.2d 401, 406 (Tex.App.—Fort Worth 1992, pet ref'd). Further, the objection, "unduly suggestive under the rules," is not specific enough to apprise the court of the rule or other ground upon which the objection is based. *See generally Zillender v. State,* 557 S.W.2d 515, 517 (Tex.Crim.App. 1977). Finally, his complaint on appeal is not the one he raised at trial. *Burks v. State,* 876 S.W.2d 877, 908 (Tex.Crim.App.1994). The first point of error is overruled.

## 2. PROSECUTOR'S ARGUMENT IN THE PUNISHMENT PHASE

The appellant objects for the first time on appeal to a portion of the argument in the punishment phase of trial. At the punishment stage, the prosecutor argued:

You talk about the victim, herself; you have a young girl, or you could have an adult. Who is most affected? People like you and me that have already lived a lot of our lives, or an eight year old girl who has to live the rest of her life? You talk about the frequency. A one time rape on the

street, or many times, as [the complainant] suffered, again, the situation here. We don't know how many times [the complainant] was subjected to the assaults by this man, but we do know it was a number of times. And the evidence that shows that is because of [the complainant's] own testimony, as a result of questions by his attorney, himself. It was so many times that it became automatic; that she knew what she had to do. So that's how we know, and that's how each of you should know we're not talking about a 15 year case; we're talking about a life case.

But you know what? Bottom line, that's your decision, because the 12 of you are the voice of this community, and you decide those issues, not me. This is my job. You decide, in your own minds, what you think a father who raped his child over and over again—because that's what it is. We call it sexual assault to make it sound nice; it's rape. A father who rapes an eight year old girl over a period of time, you decide what that is worth in Bexar County.

The appellant contends it was improper for the prosecutor to refer to extraneous offenses for which he was not on trial, citing *Melton v. State,* 713 S.W.2d 107 (Tex.Crim. App.1986), and *Klueppel v. State,* 505 S.W.2d 572 (Tex.Crim.App.1974).

*Melton* held that the prosecutor may not ask the jury to punish the defendant for offenses outside the record. 713 S.W.2d at 114. *Klueppel* held that the prosecutor may not ask the jury to punish the defendant for offenses extraneous to the indictment. 505 S.W.2d at 574. The Court of Criminal Appeals further explained *Klueppel* in *Lomas v. State,* 707 S.W.2d 566, 568–69 (Tex.Crim.App. 1986). In *Lomas,* the court explained that the prosecutor may elicit evidence of extraneous offenses surrounding the commission of the offense, and ask the jury to consider how these facts and circumstances aggravate the offense charged. The prosecutor may not, however, encourage the jury to include additional punishment for a collateral crime. *Id.* The court stated that "[t]hese competing statements of law create a delicate balance between a defendant's right to a sentence aimed at only punishing him for a charged

offense and society's interest in punishment that is based upon a complete understanding of a defendant's mens rea regarding that charged offense." *Id.*

In the present case, the indictment and evidence addressed four acts that could properly be characterized as "rape." Thus, the statement, "rapes his eight year old daughter repeatedly over a period of time" was a reasonable conclusion from the evidence, and not necessarily a reference to extraneous offenses. The child's testimony that her performance had become "automatic" was an aggravating factor. It related to the defendant's mental state and to the harm the indicted offenses had inflicted on the complainant.

The statement, "We don't know how many times [the complainant] was subjected to the assaults by this man, but we do know it was a number of times," is a different matter. It appears to invite the jury to speculate about unindicted offenses or offenses outside the record. However, any prejudice could have been cured by an instruction. *See Corwin v. State,* 870 S.W.2d 23, 36–37 (Tex.Crim.App. 1993) (similar invitation to speculate about other offenses curable). Since the appellant did not object, ask for an instruction, or request a mistrial, nothing is preserved for review. *See Cook,* 858 S.W.2d at 473.

## C. INEFFECTIVE ASSISTANCE

 In his third and fourth points of error, the appellant contends he did not receive effective assistance of counsel at trial because his attorney did not limit the admission of testimony about extraneous offenses, and did not object to the prosecutor's improper argument at the punishment phase. For both the federal constitution and Article I, Section 10 of the Texas Constitution, the Court of Criminal Appeals adopted the test for ineffective assistance of counsel the Supreme Court first enunciated in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *See Hernandez v. State,* 726 S.W.2d 53, 55–57 (Tex.Crim.App.1986). Under *Strickland,* a convicted defendant must meet a two-pronged test. He must show (1) his trial counsel's performance was deficient, and (2) the deficient performance

prejudiced the defense to such a degree that it deprived him of a fair trial. *Holland v. State,* 761 S.W.2d 307, 314 (Tex.Crim.App. 1988), *cert. denied,* 489 U.S. 1091, 109 S.Ct. 1560, 103 L.Ed.2d 863 (1989). The *Strickland* standard does not entitle a defendant to errorless or perfect counsel. *Bridge v. State,* 726 S.W.2d 558, 571 (Tex.Crim.App.1986). Further, "[t]he fact that another attorney might have pursued a different course of action at trial will not support a finding of ineffectiveness." *Passmore v. State,* 617 S.W.2d 682, 686 (Tex.Crim.App.1981), *overruled on other grounds, Reed v. State,* 744 S.W.2d 112, 125 n. 10 (Tex.Crim.App.1988); *accord Walston v. State,* 697 S.W.2d 517, 519 (Tex.App.—San Antonio 1985, pet. ref'd). A defendant must rebut the presumption counsel's performance was competent by proving (1) his attorney's representation was unreasonable under prevailing professional norms and (2) the challenged action was not sound strategy. *Miniel v. State,* 831 S.W.2d 310, 323 (Tex.Crim.App.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 245, 121 L.Ed.2d 178 (1992). The defendant must prove ineffective assistance by a preponderance of the evidence to overcome the strong presumption that the challenged actions might be sound trial strategy. *Stafford v. State,* 813 S.W.2d 503, 506 n. 1 (Tex.Crim.App.1991).

██ The record before us is silent as to trial counsel's reasons for his actions. We must presume that trial counsel was in a better position than we are to judge the practical aspects of the case, and that he made all significant decisions in the exercise of reasonable professional judgment. *See Delrio v. State,* 840 S.W.2d 443, 447 (Tex. Crim.App.1992). We have no authority to speculate about possible unsound trial strategies or lack of strategies. *See id.* (reversing court of appeals decision that was based on speculation that trial counsel had no justification for trial decision not to strike a juror). Since the record does not reflect trial counsel's reasons for acting, or not acting, as he did, we find no basis for concluding trial counsel did not exercise reasonable professional judgment. *See Jackson v. State,* 877 S.W.2d 768, 771 (Tex.Crim.App.1994) (An appellate court may not conclude based on

speculation that counsel was ineffective when record is silent about why he made the decisions he did at trial.).

We note, however, that trial counsel did file the equivalent of a motion in limine, which the trial court granted. As we have explained above, the record does not reflect that any offenses testified to were extraneous to the indictment. Most of the testimony about which the appellant complains came from the young complainant, in response to the appellant's cross-examination. Because of her youth, there was necessarily a risk she would provide unpredictable answers, and the decision whether to cross-examine her was necessarily a difficult one. Deciding whether the prosecutor's arguments were objectionable and formulating proper objections required quick judgments that, in hindsight, might not have been errorless. From the limited record before us, however, we cannot conclude that the totality of the representation was incompetent. The third and fourth points are overruled.

## D. INSUFFICIENCY OF THE EVIDENCE

The appellant's fifth point claims insufficient evidence to support conviction for Count I, Paragraph A of the indictment (aggravated sexual assault). The sixth point claims insufficient evidence to support conviction for Count II, Paragraph A (indecency with a child by contact). In reviewing the sufficiency of the evidence, this court must determine whether, considering the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979); *Little v. State*, 758 S.W.2d 551, 562 (Tex.Crim.App.), *cert. denied*, 488 U.S. 934, 109 S.Ct. 328, 102 L.Ed.2d 346 (1988). A "reasonable doubt" is a doubt based on reason and common sense after a careful and impartial consideration of all the evidence in the case. *Geesa v. State*, 820 S.W.2d 154, 162 (Tex.Crim.App.1991). It is the kind of doubt that would make a reasonable person hesitate to act in the most important of his own affairs. *Id.*

In the fifth and sixth points, the appellant contends that no rational trier of fact could conclude beyond a reasonable doubt from the complainant's testimony that he contacted or penetrated his daughter's anus with his penis. The complainant testified that the defendant touched her behind with his penis *and that it hurt.* The members of the jury were in a position to judge her demeanor when she said this. The outcry witness testified that the defendant would get on top of her, or put her on top of him, and they would "play horsey together." She followed this once with "and that he would stick his hand in her pants," and once with "and that she holds it, and that she puts it in her mouth." Getting on top of each other and "playing horsey" clearly put the defendant in position to penetrate the anus as well.

As triers of fact, the members of the jury are the sole judges of the credibility of the witnesses and the weight to be given their testimony. *Vanderbilt v. State*, 629 S.W.2d 709, 716 (Tex.Crim.App.1981), *cert. denied*, 456 U.S. 910, 102 S.Ct. 1760, 72 L.Ed.2d 169 (1982); *Bowden v. State*, 628 S.W.2d 782, 784 (Tex.Crim.App.1982). Juries may also use their common sense and apply common knowledge, observation, and experience gained in the ordinary affairs of life when giving effect to the inferences that may reasonably be drawn from the evidence. *Wawrykow v. State*, 866 S.W.2d 87, 88 (Tex. App.—Beaumont 1993, pet. ref'd). Thus the jury could properly conclude from common knowledge what part of the behind would hurt when "touched" with a penis, and what force is required. We find the evidence sufficient to support a finding of contact.

Contacting this area that is "not usually exposed to view, even in nakedness, is a significant intrusion beyond mere external contact." *Vernon v. State*, 841 S.W.2d 407, 408–09 (Tex.Crim.App.1992) (interpreting "penetration" of the vagina under 22.021 of the Texas Penal Code). We hold that this constitutes "penetration" of the anus within the meaning of section 22.021. Reviewing all of the evidence, a rational trier of fact could conclude beyond a reasonable doubt that the

defendant contacted and penetrated his daughter's anus with his penis. Points five and six are overruled.

The judgment of the trial court is AFFIRMED.